1  Laurence M. Rosen, Esq. (SBN 219683)
2  **THE ROSEN LAW FIRM, P.A.**
3  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
4  Telephone: (213) 785-2610
   Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com
6
7  *Counsel for Plaintiff*

8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA

10 | JAMES FLOYD, Individually and on behalf of all others similarly situated, | Case No. |
11 | | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
12 | Plaintiff, | |
13 | | |
14 | v. | JURY TRIAL DEMANDED |
15 | FIRST AMERICAN FINANCIAL CORP., DENNIS J. GILMORE, AND MARK E. SEATON, | |
16 | | |
17 | | |
18 | Defendants. | |

Plaintiff James Floyd ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings,

– 1 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

wire and press releases published by and regarding First American Financial Corp. ("First American" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of First American from February 17, 2017 through October 22, 2020, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business and is headquartered within this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities

– 2 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.   Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.   Defendant First American is a Fortune 500 company with over 18,000 employees and over $5 billion in revenue. Through its subsidiaries, First American provides financial services through its title insurance and services segment and its specialty insurance segment. The Company is incorporated in Delaware and its principal executive offices are located at 1 First American Way, Santa Ana, CA 92707. First American securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "FAF."

8.   Defendant Dennis J. Gilmore ("Gilmore") has been the Chief Executive Officer ("CEO") and a Director of First American during the Class Period.

9.   Defendant Mark E. Seaton ("Seaton") has been the Chief Financial Officer ("CFO") and Executive Vice President of First American during the Class Period.

10.   Defendants Gilmore and Seaton are sometimes referred to herein as the "Individual Defendants."

11.   Each of the Individual Defendants:

(a)   directly participated in the management of the Company;

(b)   was directly involved in the day-to-day operations of the Company at the highest levels;

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

12.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15.    On February 17, 2017, when First American filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendants Gilmore and Seaton. Attached to the 2016 10-K were certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Gilmore and Seaton attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

16.    The 2016 10-K made clear to investors that First American understood its information and data services were a key component of the Company's success, stating in relevant part: "In the current market environment, we are focused on growing our core title insurance and settlement services business, *strengthening our enterprise through data and process advantages*. . ." (Emphasis added.)

17.    On March 31, 2017, Defendant Gilmore released a letter to First American's stockholders (the "March 2017 Letter"). In the March 2017 Letter, Defendant Gilmore repeatedly touted First American's "ongoing focus on operating efficiency" and "increasing efficiency." The March 2017 Letter, stated under "Capital Management" in relevant part: "Much of this investment was directed to technology, including the continued enhancement of our title production platform and our customer-facing technologies and enterprise systems, all of which will improve our customers' experience and our internal process efficiency."

18.    In the March 2017 Letter, Gilmore also highlighted First American's acquisitions of two companies, RedVision and TD Service Financial, for their technology and document management capabilities.

19.    The March 2017 Letter continues, attempting to reassure stockholders and the public in his "**VISION AND STRATEGY**" section that: "Our continued focus on operating efficiency coupled with favorable market conditions helped us

– 5 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

achieve the highest pretax margin in our title segment's history. . . As we continue to pursue market share, we remain committed to ensuring that growth never comes at the expense of returns."

20.     Continuing under "**VISION AND STRATEGY**," the March 2017 Letter states: "*Strengthen the enterprise through data and process advantage . . . These efforts strengthen our control over the key data assets that underlie our products and services and facilitate our efforts to manage risk and drive efficiencies throughout the title and settlement process.*"

21.     To finish the "**VISION AND STRATEGY**" section of the March 2017 Letter, we find that Gilmore, once again, touts First American's acquisitions "allowing us to streamline the title process and continue to improve the solutions we offer our customers."

22.     In Gilmore's March 30, 2018 letter to First American's stockholders ("March 2018 Letter"), investors were repeatedly assured that First American was investing and improving its information and technology footing. Examples include:

**CAPITAL MANAGEMENT ACTIVITIES**
. . .
*Invest in our core business*—Much of First *American's $137 million in capital expenditures in 2017 was directed to the development and improvement of our technology.*

\*      \*      \*

**OUR VISION AND STRATEGY**
. . .
*Manage and actively invest in complementary businesses that support or expand the core*—. . .we enhanced the customer experience for our home warranty customers by *upgrading the digital interface to streamline the claims, payment and contract renewal processes.*

– 6 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**LOOKING AHEAD**

. . .

Importantly, I am excited about the innovation underway within the company that will enable us to meet the dynamic needs and expectations of our customers. ***Many of these initiatives leverage our unique data, technology and banking assets, giving us a distinct competitive advantage.***

(Emphasis added.)

23.     First American's website stated in 2017 under "Privacy Information":

We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

\*       \*       \*

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
•       Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
•       Information about your transactions with us, our affiliated companies, or others; and
•       Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1)

– 7 –

as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies

\*     \*     \*

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
***We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you.*** We will use our best efforts to train and oversee our employees and agents to ***ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards*** that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet . . .

**Fair Information Values**
**Fairness** We consider consumer expectations about their privacy in all our businesses. ***We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.***

– 8 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.

**Use** *We believe we should behave responsibly when we use information about a consumer in our business.* We will obey the laws governing the collection, use and dissemination of data.

**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.

**Education** *We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy.* We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.

**Security** *We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.*

(Emphasis added.)

24.    First American's website stated in 2018:

*Post-Closing Document Management*
. . . Let us store your records in our secure facility that is monitored 24-hours a day. And, of course, you always have online access to your and your customers' documents, any time, day or night.

*      *      *

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

*Secure Document Storage*
**We offer secure, reliable, and affordable records storage solutions for your needs of any size to help you manage active mortgage collateral files.**

Imaged Documents Reviewed for Deficiencies (capture critical data elements, report missing documents & interfile trailing documents)
State-of-the-art Document Tracking System
Online Access for Document Viewing, Shipping Request Fulfillment & Client-specific Inventory Reports
**Secure Facility Monitored 24-hours a day**

\*     \*     \*

**Secure access to files which provides our clients with detailed information concerning their REO property closing status**

(Emphasis added.)

25.    In Gilmore's March 29, 2019 letter to First Financial's stockholders ("March 2019 Letter"), investors were repeatedly assured that First American was investing and improving its information and technology systems with "examples of some of the industry-leading moves we're making to meet those customer expectations":

*eCLosing*—In 2018, we rolled out electronic "*eClosing*" solutions that lets consumers sign many documents online in advance of the final closing, and we are actively developing other innovative methods for creating a more complete digital closing experience.

\*     \*     \*

*Automated Data Extraction*—Through the use of optical character recognition and artificial intelligence, we're significantly reducing manual data entry, which increases our efficiency and enables us to more rapidly expand our content.

– 10 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*Blockchain*—In November, we announced the launch of a First American-developed system using blockchain technology. Designed to increase efficiency and reduce risk, we're pleased that Old Republic Title Insurance Group was the first to join us in utilizing the system.

**LOOKING AHEAD**

. . .

We'll continue streamlining and automating our processes, while enhancing the customer experience. And while our data leadership, technology and industry expertise will propel our efforts, it is ultimately our dedicated employees who drive these efforts to differentiate us in the marketplace and provide a competitive advantage.

26.   The statements referenced in ¶¶15-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company failed to implement basic security standards to protect its customers' sensitive personal information and data; (2) the Company faced a heightened risk of cybersecurity failure due to its automation and efficiency initiatives; and (3) as a result, Defendants' public statements were materially false and misleading at all relevant times.

<u>**The Truth Emerges**</u>

27.   On May 24, 2019, KrebsOnSecurity.com ("KrebsOnSecurity"), a noted cybersecurity blog, reported a massive data exposure by First American in which Approximately 885 million customer files were exposed by First American. In its post entitled, "First American Financial Corp. Leaked Hundreds of Millions of Title Insurance Records" KrebsOnSecurity disclosed in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

"The Web site for Fortune 500 real estate *title insurance giant First American Financial Corp.* [NYSE:FAF] *leaked hundreds of millions of documents related to mortgage deals going back to 2003*, until notified this week by KrebsOnSecurity. *The digitized records — including bank account numbers and statements, mortgage and tax records, Social Security numbers, wire transaction receipts, and drivers license images — were available without authentication to anyone with a Web browser.*

\*      \*      \*

Earlier this week, KrebsOnSecurity was contacted by a real estate developer in Washington state who said he'd had little luck getting a response from the company about what he found, which was that a portion of its Web site (firstam.com) was leaking tens if not hundreds of millions of records. He said anyone who knew the URL for a valid document at the Web site could view other documents just by modifying a single digit in the link.

And this would potentially include anyone who's ever been sent a document link via email by First American.

*KrebsOnSecurity confirmed the real estate developer's findings, which indicate that First American's Web site exposed approximately 885 million files, the earliest dating back more than 16 years. No authentication was required to read the documents.*

Many of the exposed files are records of wire transactions with bank account numbers and other information from home or property buyers and sellers. Ben Shoval, the developer who notified KrebsOnSecurity about the data exposure, said that's because First American is one of the most widely-used companies for real estate title insurance and for closing real estate deals — where both parties to the sale meet in a room and sign stacks of legal documents.

\*      \*      \*

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Shoval shared a document link he'd been given by First American from a recent transaction, which referenced a record number that was nine digits long and dated April 2019. ***Modifying the document number in his link by numbers in either direction yielded other peoples' records before or after the same date and time, indicating the document numbers may have been issued sequentially.***

\*     \*     \*

I should emphasize that these documents were merely available from First American's Web site; I do not have any information on whether this fact was known to fraudsters previously, nor do I have any information to suggest the documents were somehow mass-harvested ***(although a low-and-slow or distributed indexing of this data would not have been difficult for even a novice attacker).***

Nevertheless, the information exposed by First American would be a virtual gold mine for phishers and scammers involved in so-called Business Email Compromise (BEC) scams, which often impersonate real estate agents, closing agencies, title and escrow firms in a bid to <u>trick property buyers into wiring funds to fraudsters</u>. According to the FBI, BEC scams are the most costly form of cybercrime today.

Armed with a single link to a First American document, BEC scammers would have an endless supply of very convincing phishing templates to use. A database like this also would give fraudsters a constant feed of new information about upcoming real estate financial transactions — ***including the email addresses, names and phone numbers of the closing agents and buyers***.

(Emphasis added.)

28.     On this news, shares of First American fell $3.46, or over 6%, to close at $51.80 on May 25, 2019.

– 13 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

29.     On October 22, 2020, First American filed a quarterly report on Form 10-Q with the SEC, announcing that the Company had received a Wells Notice regarding its massive security breach, stating, in pertinent part:

> Currently, governmental agencies are examining or investigating certain of the Company's operations. ***These exams and investigations include two investigations initiated in connection with the information security incident that occurred during the second quarter of 2019, one being conducted by the Securities and Exchange Commission ("SEC") enforcement staff*** and the other by the New York Department of Financial Services. The SEC enforcement staff is questioning the adequacy of disclosures the Company made at the time of the incident and the adequacy of its disclosure controls. ***In September 2020, the Company received a Wells Notice informing the Company that the enforcement staff has made a preliminary determination to recommend a filing of an enforcement action by the SEC against the Company.***

(Emphasis added.)

30.     On this news the price of First American shares fell approximately $4.83 per share, or 9%, to close at $46.75 per share on October 22, 2020.

31.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of First American during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their

– 14 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

– 15 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(b)    whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

– 16 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(a)   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)   the omissions and misrepresentations were material;

(c)   the Company's securities are traded in efficient markets;

(d)   the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)   the Company traded on the NYSE, and was covered by multiple analysts;

(f)   the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)   Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

39.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

– 17 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

45. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

46.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

47.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

48.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

49.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

55.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

– 21 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.


Dated: October 25, 2020             Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

– 22 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS