# EXHIBIT A

Case 2:20-cv-09781-DSF-E    Document 38-1    Filed 03/17/21    Page 2 of 12   Page ID #:303

[law.com](law.com)

# Spotlight on DFS Trial Forum for First Cyber-Regs Case

15-19 minutes



William F. Johnson

In the inaugural enforcement action under its new cybersecurity regulations, the New York Department of Financial Services announced charges against First American Title Insurance Company in July 2020. Companies governed by the regulations and their counsel have anxiously awaited this case of first impression, and the merits of the enforcement action have been extensively covered by legal commentators. Thousands of security incidents have been reported to DFS since the cybersecurity

regulations were enacted four years ago, and DFS Superintendent Linda Lacewell remarked last year that the first enforcement action under the new rules "will come—be ready." Address at New York City Bar Association (Feb. 11, 2020).

This column focuses on a less-heralded but equally important aspect of the enforcement action: how the administrative trial of the First American charges will be conducted. The hearing is scheduled for March 22, 2021 after several postponements. First American has vowed to fight the DFS charges and is simultaneously defending a derivative suit against the company and its officers and directors that tracks DFS's allegations. There are a number of unique features of DFS's administrative hearings that should be top of mind. These features include the identity of the DFS hearing officer, relaxed rules of evidence, a "substantial evidence" burden of proof that is less than the usual preponderance level, the nature of the appeals process, and a fact-finding forum receptive to an expansive view of appropriate penalties.

## Cybersecurity Regulations and the First American Charges

In February 2017, DFS enacted new cybersecurity regulations that contained detailed and demanding requirements with increased executive and senior management participation in cybersecurity monitoring, comprehensive risk analyses, written policies and procedures, specific technical safeguards, and annual compliance certifications for companies in the financial services industry. 23 NYCRR 500. The regulations govern "Covered Entities," which are defined as "any person operating under or required to operate

under a license, registration, charter, certificate, permit, accreditation or similar authorization under the Banking Law, the Insurance Law or the Financial Services Law." 23 NYCRR 500.1.1.

Since the regulations were enacted, Covered Entities have strived to maintain compliance to avoid being the first company on the wrong side of the Department's first enforcement action. The tension broke on July 22, 2020, when DFS charged the real estate title insurer First American with myriad violations of the cybersecurity regulations. According to DFS, from at least October 2014 through May 2019, due to a known vulnerability, 850 million documents—of which at least 65 million contained consumers' personal information, including bank account numbers, mortgage and tax records, Social Security numbers, wire transaction receipts, and drivers' license images—were available "to anyone with a web browser." New York State Department of Financial Services, *In the Matter of First American Title Insurance Company*, "Statement of Charges and Notices of Hearing" (July 21, 2020). DFS appears to have chosen this matter as the first enforcement action under the new cybersecurity regulations based on the amount of records involved, the sensitivity of the information in those records, the ease with which one could access those records without authorization, the supposed red flags, and the delay in responding. See "Department of Financial Services Announces Cybersecurity Charges Against a Leading Title Insurance Provider for Exposing Millions of Documents with Consumer's Personal Information," New York State Department of Financial Services press release (July 22, 2020).

First American has vowed to "vigorously defend" itself against what it described as "unreasonable charges." "New York DFS

charges title insurer with cybersecurity violation," *Security* (July 28, 2020). The trial will begin on March 22, 2021, but perhaps on a less-than-even playing field.

## DFS Administrative Hearings

A trial of the First American case will reveal several aspects of the DFS enforcement program that the typical settled consent order does not. A trial will result in a more complete record and will likely provide additional insight into how DFS approaches its cybersecurity regulation enforcement mandate. Covered Entities will also get the opportunity to see the mechanics of a DFS administrative hearing. There are several procedural nuances to the upcoming hearing, each of which could affect the outcome of the case.

First, the hearing officer is a DFS employee. Under 23 NYCRR Part 2.2, the hearing officer "shall" be the DFS Superintendent, any Deputy Superintendent, or any DFS employee deputized by the Superintendent. The two most relevant Deputy Superintendents —those leading the DFS Cybersecurity Division and Consumer Protection and Financial Enforcement Division—signed the complaint against First American and the Superintendent herself undoubtedly authorized it. Peter C. Dean, another Deputy Superintendent and Deputy General Counsel of the Real Estate Finance Division, has been assigned as the presiding officer of the hearing. The fact that all hearing officers are DFS employees raises at least potential concerns of bias. First American could move for the hearing officer's recusal (23 NYCRR Part 2.2), but that seems unlikely.

Second, the rules of evidence in a DFS hearing are quite relaxed, particularly when compared to those in New York state or federal court. Evidentiary and burden of proof issues are governed by NY Financial Services Law §305(e) and NY State Administrative Procedure Act §306, instead of the NY CPLR or the federal rules. The Financial Services Law states that "[n]othing herein contained shall require the observance at any such hearing of formal rules of pleading or evidence." NY Fin. Svcs. Law §305(e). The Administrative Procedure Act states, inter alia, that the requisite burden of proof is "substantial evidence." Notably, this standard is a *lower burden* than the "preponderance of the evidence" standard that governs most civil cases. See *Ridge Road Fire Dist. v. Schiano,* 16 N.Y.3d. 494 (2011) ("This Court has defined 'substantial evidence' as such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact, and is less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt.") (quotations and citations omitted). Although DFS still has the burden of proving its case, the reduced evidentiary standards give DFS a clear advantage. In addition, evidence that would not be admissible in a court proceeding might be admitted over First American's evidentiary objections, resulting in a more favorable record for DFS. On the other hand, relaxed standards could also benefit First American if it seeks to present evidence in its defense that might not pass muster in court.

Third, if the DFS hearing officer issues a decision against First American, the company's only recourse is an Article 78 proceeding (NY CPLR Art. 78), appealing the decision to the New York State Supreme Court within four months of the final ruling by DFS. There

is no appeal process within DFS, meaning a one-shot hearing exhausts the company's "administrative remedies." This limited right of appeal can cut both ways. Although an appeal would allow First American to take the fight out of DFS's home-field, an Article 78 proceeding presents challenges for the petitioner.

Article 78 proceedings are only taken up by the court in four instances: (1) to review a decision of a state body or officer that was based on insufficient evidence; (2) to review a decision of a state body or officer that was obviously incorrect or unreasonable, or based on an error of law; (3) to compel a state body or officer to act; and (4) to prohibit a state body or officer from proceeding without or in excess of its jurisdiction. NY CPLR §7803. In an appeal from a DFS administrative hearing, the New York Supreme Court justices will give DFS's determinations "great deference." See *Matter of Howard v. Wvman*, 28 N.Y.2d 434, 438 (1971) ("[T]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld."). Oral argument on the merits of the petition may not be granted. Indeed, under the limited scope of judicial review afforded to administrative determinations, the reviewing court's primary consideration is whether the action was arbitrary and capricious—a test that assesses whether the action was taken without sound basis in reason and without regard to the facts—or constituted an abuse of discretion. *Pell v. Bd. of Educ.*, 34 N.Y.2d 222, 231 (1974). Courts will not weigh the evidence or substitute their judgment for that of an agency if a rational basis exists in the record for the agency's determination. Id. Article 78 petitioners face an uphill battle to prevail under these standards.

Fourth, the DFS trial lawyers may find that a DFS hearing officer is

a more receptive audience than a federal judge for an expansive interpretation of DFS's penalty scheme. In its case against First American, DFS is alleging that each instance of non-public sensitive information that was exposed and not encrypted or protected constitutes a separate violation carrying up to $1,000 in penalties. If DFS prevails on liability and its theory of penalty is adopted, there is the potential for a very substantial fine to be levied on First American, given the number of exposed records and the array of charges.

## Comparison to Other Agencies

This is certainly not the first time that an agency has been thought to possess a home-court advantage in administrative hearings. Following the Dodd-Frank Act's passage in 2010, the Securities and Exchange Commission increasingly opted to litigate in its administrative forum with SEC employees as administrative law judges, arguably to avoid the more balanced federal court system, which offers respondents more expansive evidentiary and burden of proof protections, in addition to a well-known and less stringent appellate process. The SEC's administrative proceedings have historically been thought to pose an uphill battle for respondents, with the SEC prevailing in approximately 90% of the cases brought in that forum. Jean Eaglesham, "SEC Wins With In-House Judges," *The Wall Street Journal* (May 6, 2015). The review process for SEC administrative proceedings is not free from potential bias because the Commission that authorized the action also sits as the appellate review panel. However, in the SEC's administrative review process, both the Enforcement Division staff and the respondent may appeal all or any portion of the initial

decision, an intermediate appellate step not available to respondents in DFS's administrative hearing process.

Litigants raised concerns to the SEC about the fairness of its home-court advantage, including the lack of formal discovery and lax evidentiary standards that permit the hearing judge to admit all relevant evidence (including hearsay) (17 C.F.R. §201.320(a)). In response, the SEC adopted amendments to its rules of practice to even the playing field, including permitting a limited number of depositions in its administrative proceedings and changing the rules surrounding the admissibility of certain types of evidence. "SEC Adopts Amendments to Rules of Practice for Administrative Proceedings," Securities and Exchange Commission press release (July 13, 2016). Perhaps the First American hearing will prompt a similar move to amend DFS's hearing process.

## A Public Trial May Shape DFS Regulations

Apart from the procedural and evidentiary issues, the administrative hearing against First American may help to define the parameters of DFS's stringent new cybersecurity regulations and provide some insight into what DFS considers to be reasonable security measures. Past legal battles involving DFS have led to more clarity on its regulations. A case involving cryptocurrencies is an example.

In 2014, DFS introduced its so-called "BitLicense" regulation, the first comprehensive virtual currency regulatory framework enacted in the U.S. that required, among other things, that businesses transacting in virtual currencies be licensed to operate within New York State, as well as other onerous recordkeeping and AML

requirements. Plaintiff-petitioner Theo Chino, an entrepreneur, initiated an Article 78 proceeding against DFS, seeking an order enjoining and permanently restraining DFS from enforcing the BitLicense regulation. *Chino v. New York Dep't of Fin. Servs.,* 94 N.Y.S.3d 537 (Sup. Ct. N.Y. Cnty. 2017), aff'd 171 A.D. 3d 610, *leave to appeal denied* 34 N.Y.3d. 908. Chino alleged that the "complex and burdensome" regulatory scheme served to "quash" the growth of cryptocurrency-based businesses in New York, citing financial losses his own business incurred as a result. *Chino,* Index No. 101880/15 (1st Dep't June 28, 2019) (Aff. in Further Supp. of Mot. for Leave to Appeal).

The court ultimately dismissed Chino's lawsuit for a lack of standing to bring the Article 78 action, reasoning that Chino had abandoned his BitLicense application and thus had not exhausted his administrative remedies, highlighting the often-insurmountable hurdle posed by Article 78 proceedings. Perhaps because of such challenges, however, in June 2020, DFS published new guidance and FAQs related to specific currencies and the licensing process aimed at making it more efficient and less burdensome. Perhaps First American's trial defense, premised on the reasonableness of its behavior, can similarly yield additional guidance from DFS on the application of its cybersecurity regulations.

## Takeaways

Several aspects of the DFS administrative hearing against First American—and any subsequent hearings against other Covered Entities—could reinforce the perception that DFS's hearings are skewed in their favor and that the process provides fewer procedural safeguards to defendants than New York state or

federal court proceedings. In light of this perception and the standards governing review in a subsequent Article 78 proceeding, practitioners should take advantage of the looser evidentiary standards and build as comprehensive a record as possible during the DFS hearing. This may include, for example, submitting testimony and reports by expert and lay witnesses or preparing affidavits for submission to the court during the proceeding to ensure a fulsome administrative record in the Article 78 proceeding.

We will be closely tracking developments in the First American action following the March 22, 2021 public hearing and any subsequent litigation in state court. Time will tell who has the greater advantage in the more relaxed administrative forum, DFS or First American. Other litigants against DFS will also be watching, as administrative hearings in other cases are scheduled later in 2021. Outside the cybersecurity context, DFS is scheduled for a hearing against Endo Pharma on June 7, 2021, in a case in which DFS alleges that Endo Pharma fraudulently misrepresented the safety and efficacy of its opioid drugs while minimizing the risk of addiction and other effects. See New York State Department of Financial Services, *In the Matter of Endo International, PLC., Endo Health Solutions, Endo Pharmaceuticals and Par Pharmaceutical Companies* (June 8, 2020).

**William F. Johnson** *is a partner in the Special Matters and Government Investigations Practice Group at King & Spalding. Associate* **Kimberly A. Wade** *assisted in the preparation of this article, with significant contributions from partner* **Scott Ferber***, counsel* **Nicole Pereira***, and associates* **Joseph L. Zales** *and* **Clarissa Moliterno***.*

Case 2:20-cv-09781-DSF-E    Document 38-1    Filed 03/17/21    Page 12 of 12    Page ID
#:313

**Copyright 2021. ALM Media Properties, LLC. All rights reserved.**